## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-CR-0297-001-CVE** |
| | ) | |
| **CHRISTOPHER VALENTINO WEEDEN,** | ) | |
| **previously named as Christopher Weeden,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant's Motion in Limine (Dkt. # 31);

Defendant's Motion to Suppress Evidence from the Unlawful Search of Vehicle (Silver Dodge

Charger) (Dkt. # 47); Defendant's Second Motion in Limine to Prohibit Government Use of

Untimely Undisclosed Evidence (Dkt. # 48); Defendant's Preventive Motion to Strike Anticipated

Government Expert Testimony and/or In the Alternative a Request for *Daubert* Hearing (Dkt. ## 50,

52); Defendant's Motion to Disclose Confidential Informant and Memorandum in Support Thereof

(Dkt. # 51); Motion and Memorandum in Support to Dismiss Count One of the Indictment for

Duplicity, or in the Alternative to Require Government to Elect Between Multiple Charges

Contained in the Same Charge (Dkt. # 53); Motion to Dismiss Indictment, or in the Alternative

Compel Discovery Subject to Defendant's Pending Motion in Limine (Dkt. # 54); Defendant's

Motion to Suppress Evidence and *Franks* Hearing (Dkt. # 56); and Weeden's sealed motion (Dkt.

# 60).

**I.**

On November 18, 2020, a grand jury returned an indictment charging Christopher Valentino Weeden with being a felon in possession of a firearm and ammunition, and Valena Rose Hunt is charged with aiding and abetting Weeden in the commission of this offense (count one). Dkt. # 4, at 1-2. Hunt is charged with knowingly disposing of a firearm and ammunition to a felon (count two). Id. at 3. Weeden and Hunt are also charged with possession of marijuana with intent to distribute (count three), possession of a firearm in furtherance of a drug trafficking crime (count four), and maintaining a drug involved premises (count five). Id. at 4-6.

The criminal charges are based on evidence seized during a search of a residence located at 11708 East 7th Street, Tulsa, Oklahoma. The affidavit for search warrant (Dkt. # 47-1) was prepared by Tulsa Police Department (TPD) Officer Mike Cawiezell. The affidavit states that Cawiezell had evidence supporting a finding of probable cause that Weeden had committed the offense of being a felon in possession of a firearm, and Cawiezell requested a search warrant for "a certain vehicle, and/or house, building or premises, the curtilage thereof and the appurtenances thereunto." Dkt. # 47-1, at 2. Cawiezell states that he received information from a reliable confidential informant (RCI) that a person with a Facebook account under the name "Valentino Weeden" was in possession of a semi-automatic pistol. Id. at 2-3. Cawiezell accessed the publicly available Facebook page and located a post in which Weeden shared a picture of his Oklahoma Department of Corrections registry page showing that he had a prior conviction for second degree murder. Id. at 3. Cawiezell used the Tulsa Regional Area Criminal Information System (TRACIS) to conduct a criminal records check for Christopher Weeden, and found that Weeden had filled out a Violent Offender Registration Report on June 15, 2020. Id. The report listed an address of 1643 East Admiral Place and a phone

2

number for Weeden, and Cawiezell attempted to verify that Weeden actually lived at this address. Cawiezell learned that Weeden had utilities registered in his name at 11708 East 7th Street, and the phone number was the same that he provided in the violent offender registration report.  Id. Cawiezell conducted surveillance 11708 East 7th Street and he observed a black Chevrolet Camaro in the driveway.  Id.  Cawiezell conducted a records check of the license plate and found that the vehicle was registered to Christopher Weeden, but the address provided with the vehicle registration was 1643 East Admiral Place.  Id.  Cawiezell also observed a black male matching the description of Weeden leave the residence and drive away in the Camaro.  Id.  Cawiezell states that it is not unusual for offenders to provide an inaccurate address to the TPD to avoid probation checks or other types of post-release supervision, but offenders under supervision typically provide a valid phone number due to regular contact by phone from a probation or supervision officer.  Id.  A magistrate signed a search warrant authorizing TPD to search 11708 East 7th Street for firearms, ammunition, and residency paperwork.  Id. at 5.

On November 12, 2020, law enforcement officers searched 11708 East 7th Street and found four people in the residence.  Weeden and Hunt were both present during the search.  Dkt. # 47-4, at 2.  Officers recovered marijuana, a Taurus Model PT740 firearm, six rounds of ammunition, and digital scales from the house, and they found evidence of a marijuana grow operation in one of the bedrooms.  Id.  Officers also searched a silver Dodge Charger that was parked in the driveway, and found two notebooks containing drug notations and a utility bill addressed to Weeden for the address of 11708 East 7th Street.  Id.  Weeden and Hunt agreed to waive their Miranda[1] rights and they were interviewed by TPD detectives.  Weeden and Hunt both claimed that the firearm belonged to Hunt,

---

[1]     Miranda v. Arizona, 384 U.S. 436 (1966).

3

although they made conflicting statements about the location of the firearm and why it was found in the bedroom when police officers arrived to execute the search warrant.  Id. at 3.  Special Agent Brett William of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) conducted a search of the National Crime Information Center (NCIC) database and confirmed that Weeden had a prior felony conviction for second degree murder.  Id. at 4.

On November 17, 2020, a magistrate judge signed a complaint (Dkt. # 1) charging Weeden being a felon in possession of a firearm, possession of marijuana with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and maintaining a drug involved premises. The indictment (Dkt. # 4) was returned by the grand jury on November 18, 2020, and arrest warrants were issued for Weeden and Hunt.  Weeden was arrested and made his initial appearance on November 25, 2020, and the Court appointed Stephen Layman to represent defendant.  Layman subsequently requested leave to withdraw from his representation of defendant due to a breakdown of the attorney/client relationship,  and Robert Gifford, II was appointed to represent defendant. Hunt was not arrested until August 13, 2021, and Patrick Quillan has been appointed to represent Hunt.[2]  Dkt. # 73.

## II.

Weeden asks the Court to suppress all evidence seized during the search of his residence and from the vehicle located in the driveway.  Dkt. ## 47, 56.  Weeden seeks disclosure of the identity of the RCI referenced in the affidavit for search warrant, and he requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  Dkt. ## 51, 56.  He asks the Court to prevent plaintiff from

---

[2]     Weeden's sealed motion (Dkt. # 60) is moot in light of Hunt's arrest and the appointment of counsel to represent her in this case.

relying on any evidence that has not been produced in pretrial discovery, including a potential expert witness to testify concerning the interstate nexus of the firearm seized during the search of 11708 East 7th Street.  Dkt. # 48, 50, 54.  Weeden also asks the Court to dismiss count one of the indictment, because it improperly alleges multiple crimes in a single criminal charge.  Dkt. # 53.

**Search of Residence (Dkt. # 56)**

Weeden argues that the affidavit for search warrant fails to establish probable cause, because the affidavit relies on a vague tip from the RCI, and many of Cawiezell's statements should be disregarded due to his lack of credibility.[3]  Dkt. # 56.  Plaintiff responds that Cawiezell's affidavit established probable cause for a search of Weeden's residence and, even if it did not, the officers executing the warrant acted in good faith by relying on the warrant.  Dkt. # 61.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a

---

[3]     Weeden's allegations concering Cawiezell's credibility arise from a separate criminal case. United States v. Kenneth Jermaine Ferrell, 21-CR-210-JED (N.D. Okla.).  In that case, Gifford alleged that Cawiezell omitted from a police report that Sean Larkin, a TPD officer, was present during the execution of a search warrant, and Gifford claims that Cawiezell and/or Larkin planted a firearm in Ferrell's residence during the search.  Dkt. # 47-2.  Larkin has been identified as an unindicted co-conspirator in a previous police corruption matter involving several TPD officers.  The criminal charge against Ferrell was ultimately dismissed by the United States Attorney's Office, but there has not been a finding that evidence was planted or that Cawiezell intentionally omitted Larkin's presence when Cawiezell prepared his report.  The Court also notes that the events giving rise to the Ferrell case occurred in April 2021, almost six months after the search warrant was executed in this case.  Gifford relies on the allegations raised in the Ferrell case to call Cawiezell's credibility into doubt, but he has not come forward with any evidence of misconduct in this case.  The Court will discuss with the parties at the pretrial conference what use Gifford's allegations concerning Cawiezell's conduct in the Ferrell case will have should Cawiezell testify at trial, but the Court will not disregard statements in Cawiezell's affidavit (Dkt. # 47-1) for the purpose of the probable cause analysis in this case unless Weeden produces evidence concerning the veracity of specific statements in the affidavit.

neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

The Court has reviewed the affidavit and finds that it provides a substantial basis for a magistrate to find that probable cause existed for the search of 11708 East 7th Street. Cawiezell received information from an RCI that a person using a Facebook account under the name of Valentino Weeden was in possession of a firearm. Dkt. # 47-1, at 2. The RCI provided a picture of the Facebook page to Cawiezell, and Cawiezell viewed the publicly available Facebook account of Valentino Weeden. Id. Cawiezell found a Facebook post in which Valentino Weeden shared a picture of his Oklahoma Department of Corrections registration, and the post stated that Christopher Weeden had been convicted of second degree murder. Id. at 3. Cawiezell states that the RCI has provided reliable information in the past and he believed that the RCI's information in this case was

6

reliable, but he engaged in further investigation to verify the RCI's information about Weeden.  Id.
Cawiezell checked the TRACIS database and confirmed that Weeden had a prior conviction for
second degree murder.  Id.  Weeden had also completed a Violent Offender Registration Report
listing his address as 1643 East Admiral Place and he provided a phone number.  Id.  Cawiezell
checked a database maintained by the city of Tulsa listing registration information for public utilities,
and Weeden provided an address of 11708 East 7th Street and the same phone number listed in his
violent offender registration.  Id.  The utilities for 1643 East Admiral Place were registered under
the name of Julia Works.  Cawiezell conducted surveillance at 11708 East 7th Street and observed
a black Chevrolet Camaro in the driveway.  The vehicle was registered to Weeden at the address of
1643 East Admiral Place, and Cawiezell observed a black male matching Weeden's description drive
away from the residence in the vehicle.  Id.  Based on his training and experience, Cawiezell knew
that persons under parole or post-release supervision often provide a false address but an accurate
phone number, because this allows them to maintain contact with their parole or supervision officer
by phone without disclosing their actual location to law enforcement officers.  Id.  Considered as a
whole, this information provides a reasonable basis for a magistrate to find that Weeden had
previously been convicted of a felony and that he was known to be in possession of a firearm at
11708 East 7th Street, and probable cause existed for the issuance of the search warrant sought by
Cawiezell.

Defendant argues that probable cause was lacking for the search warrant, because the
affidavit for the search warrant fails to establish the reliability of the RCI.  When probable cause is
based on an informant's tip, "the court makes a probable cause determination based on the totality
of the circumstances, including the informant's veracity, reliability, and basis of knowledge."  United

States v. Hendrix, 664 F.3d 1334, 1139 (10th Cir. 2011).  These factors are not absolute requirements for a magistrate's reliance on information provided by an informant, and the reviewing magistrate must consider the totality of the circumstances in determining whether an informant's tip should be considered in the probable cause inquiry.  Id.  If there is sufficient independent corroboration of the informant's information, there is no need for a magistrate to consider the informant's reliability.  United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000).  If the basis for the informant's tip is not fully described in the affidavit, the court should consider whether the tip contains "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity."  United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009).

Weeden focuses much of his argument for the suppression of evidence on the alleged unreliability of the RCI and the vagueness of the RCI's information.  Dkt. # 56, at 2-3, 6-10. Weeden is correct that the information provided by the RCI is somewhat vague, and the RCI does not describe the firearm possessed by Weeden or when the RCI saw Weeden with a firearm. However, the Court does not find that this detracts from the existence of probable cause in this case. The information was provided by an RCI, not an anonymous source, and the RCI had provided reliable information in previous investigations.  The RCI's tip was also not the primary source of information used to establish probable cause, and the tip was merely the starting point in Cawiezell's investigation.  Even if Cawiezell could not confirm that Weeden was in possession of a firearm, he was able to gather evidence that (1) Weeden had a prior felony conviction, (2) Weeden was using an address that he failed to disclose in his violent offender registration, (3) Weeden was observed leaving 11708 East 7th Street, and (4) based on Cawiezell's training and experience, persons under

8

post-release supervision often provide an inaccurate address to avoid checks or supervision by parole

or law enforcement officers.  The additional investigation did not directly confirm that Weeden was

in possession of a firearm, but Cawiezell did verify that Weeden was a convicted felon who appeared

to be avoiding post-release supervision by law enforcement officials.  It not necessary for police to

independently corroborate every detail of an informant's tip, and "an officer simply must have

knowledge of other matters that reasonably corroborate the informant's statements."  United States

v. Banks, 884 F.3d 998, 1009 (10th Cir. 2018).  The Court finds that Cawiezell provided sufficient

corroboration for the RCI's tip and the lack of specificity in the RCI's tip is not a basis to find the

search warrant invalid.

Defendant requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because

he claims that Cawiezell made material misrepresentations or omissions in his affidavit.  "Under

*Franks*, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search

warrant application contains a reckless misstatement or omission that (2) is material because, but for

it, the warrant could not have lawfully issued."  United States v. Herrera, 782 F.3d 571, 573 (10th

Cir. 2015).  "A defendant is entitled to a *Franks* hearing if he 'makes a substantial showing that the

affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities,

would not be sufficient to support a finding of probable cause.'"  United States v. Cooper, 654 F.3d

1104, 1128 (10th Cir. 2011).  If defendant cannot produce such evidence, he must provide an

explanation as to why he cannot produce the evidence in order to obtain a Franks hearing.  United

States v. Moses, 965 F.3d 1106, 1110 (10th Cir. 2020).  The Tenth Circuit has stated that:

> Before the defendant will be entitled to such a hearing, however, the defendant must
> allege deliberate falsehood or reckless disregard for the truth, and those allegations
> must be accompanied by an offer of proof.  Affidavits of witnesses should be

provided to the court or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  If these requirements are met, then the defendant must show that the remaining content of the warrant affidavit is insufficient to support a finding of probable cause.  "The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."

United States v. Artez, 389 F.3d 1106 (10th Cir. 2004) (citations omitted).

The Court finds that defendant has not made a substantial showing that Cawiezell's affidavit contains a false statement made intentionally or recklessly or that the alleged false statements would negate the existence of probable cause.  The Tenth Circuit has explained that a defendant seeking a Franks hearing "must do more than allege a problem with the warrant," and his allegations "must be accompanied by an offer of proof."  Herrera, 782 F.3d at 571.  Weeden has failed to come forward with evidence or an offer of proof in support of his allegations that Cawiezell intentionally or recklessly made a false statement in his affidavit.  Weeden argues that Cawiezell made material misrepresentations or omissions in his affidavit concerning Cawiezell's use of informants and his allegedly unethical behavior as a police officer.  Specifically, Weeden claims that Cawiezell failed to notify the magistrate issuing the search warrant that informants are paid to provide information to police, and that Cawiezell uses stock language in his affidavits concerning the reliability of informants.  Dkt. # 56, at 8-9.  Weeden also claim, without providing evidence, that his Facebook page was not publicly available and Cawiezell was lying when he stated that he had reviewed posts on Weeden's Facebook page.  Id. at 9.  Weeden has failed to come forward with evidence or an offer of proof in support of his allegations that Cawiezell intentionally or recklessly made a false statement in his affidavit, and he has not provided an explanation as to why evidence could not be provided. Even if the Court assumed that Weeden's allegations were true, the alleged false statements or

10

omissions would not affect the Court's finding that the affidavit established the existence of probable cause to search 11708 East 7th Street.

Even if the Court were to find probable cause lacking, plaintiff argues that the good faith exception applies and the evidence in this case should not be suppressed. Dkt. # 61, at 9-11. There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993). When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted." Id. The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Harare, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21. In Leon, the Supreme Court identified four exceptions to the good faith rule. If a warrant is invalid, the good faith rule does not prevent exclusion of evidence (1) "if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;" and (4) if a

police officer relies on a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  468 U.S. at 922-23.

The Court finds that the good faith exception would apply even if the Court had found that the warrant was not supported by probable cause.  The Court has already considered Weeden's request for a <u>Franks</u> hearing and determined that Weeden has not come forward with evidence calling into question the veracity of any statement made in Cawiezell's affidavit.  For the purpose of the good faith exception, the Court also does not find that any statements in the affidavit were knowingly false or made with reckless disregard for the truth.  The Court also notes that the report prepared following the search of the residence shows that Cawiezell was not the lead or supervising officer for the search of 11708 East 7th Street.[4]  Dkt. # 47-3, at 5.   There is nothing on the face of the affidavit or warrant that would have suggested to a reasonable police officer executing the warrant should have known that it was invalid, and the good faith exception would apply even if the Court determined that probable cause was lacking.  Weeden's motion to suppress evidence seized during the search of 11708 East 7th Street (Dkt. # 56) is denied.

**<u>Search of the Vehicle (Dkt. # 47)</u>**

Weeden argues that the search of the silver Dodge Charger located at 11708 East 7th Street constituted an illegal search under <u>Collins v. Virginia</u>, 138 S. Ct. 1663 (2018), because the vehicle was not specifically described in the affidavit for search warrant and no exception to the warrant requirement permitted the search.  Dkt. # 47.  Plaintiff responds that Weeden's reliance on <u>Collins</u>

---

[4]      Plaintiff states that Cawiezell was not present during the search, but the report does not list all of the officers who present by name and the record does not permit the Court to determine whether Cawiezell was present during the search.  Dkt. # 61, at 14.

is misplaced, because Collins does not forbid vehicle searches when police lawfully enter the curtilage of a home pursuant to a search warrant.[5]  Dkt. # 61, at 8.

In Collins, two police officers had attempted to conduct a traffic stop of a driver on a motorcycle on separate occasions, but the driver failed to stop in both instances and eluded the traffic stop.  138 S. Ct. at 1668.  The police officers conferred and determined that the motorcycle was stolen, and they learned that the motorcycle was in the possession of Ryan Collins.  Id.  One of the police officers continued to investigate and found that Collins kept the motorcycle at his girlfriend's house, and the police officer drove to the address without obtaining a search warrant.  Id.  The motorcycle was covered with a tarp and parked in a partially enclosed section of the driveway on the curtilage of the residence, and a person approaching the home to speak to the residents would have turned off before reaching the motorcycle.  Id. at 1670-71.  The Supreme Court determined that the motorcycle was located within the curtilage of the home, and the automobile exception to the warrant requirement of the Fourth Amendment does not permit warrantless searches of vehicles located within the curtilage of the home.  Id. at 1673.

In this case, the parties agree that the silver Dodge Charger was located within the curtilage of 11708 East 7th Street, but the parties dispute whether the search warrant permitted police officers to search the vehicle.  Unlike Collins, plaintiff is not attempting to justify the search of the vehicle using the automobile exception, and the sole issue is whether the search was permissible under the

---

[5]     Plaintiff also notes that Weeden could be disclaiming possession or ownership of the silver Dodge Charger and, if this is the case, he would lack standing to challenge the search of the vehicle.  Dkt. # 61, at 7.  It is not clear from Weeden's briefing that he is disclaiming a possessory interest in the vehicle, but plaintiff has preserved the issue of standing as an alternate basis to deny Weeden's motion to suppress evidence recovered during the search of the silver Dodge Charger.

search warrant for the residence.  Dkt. # 61, at 6-8.  Plaintiff cites United States v. Gottschalk, 915 F.2d 1459 (10th Cir. 1990), for the proposition that "a search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein."  Id. at 1461.  Gottschalk remains good law and Collins has no application in this case.  United States v. Hohn, 606 F. App'x 902 (10th Cir. 2015).[6]  The search warrant permitted police to search the "vehicle and/or house, building and premises, the curtilage thereof and appurtenances thereunto belonging" to 11708 East 7th Street.  Dkt. # 47-3.  Gottschalk does not require that the vehicle be specifically described in the search warrant, as long as the vehicle is located within the curtilage of the home.  The warrant in this case specifically authorized the search of any vehicle found at the premises, as well as the curtilage, and the Court finds no basis to suppress evidence seized from the silver Dodge Charger.  Weeden's motion to suppress evidence seized from the vehicle (silver Dodge Charger) (Dkt. # 47) is denied.

**Motion to Exclude Expert Testimony (Dkt. ## 50, 52)**

Weeden asks the Court to "preventively" strike any potential expert witness offered by plaintiff on the interstate nexus the firearm, because Weeden believes that plaintiff may attempt to use an unqualified ATF agent to "read something from an ATF database" without calling an appropriate expert witness.  Dkt. # 50.  Plaintiff has filed notice (Dkt. # 65) that it intends to call ATF Special Agent Brett Williams to testify that the firearm seized from 11708 East 7th Street traveled in interstate commerce before it was possessed by Weeden, and there is nothing novel about

---

[6]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

14

THIS

this testimony that would require a pretrial <u>Daubert</u>[7] hearing.  Dkt. # 65.  The Court has reviewed

Williams' curriculum vitae and preliminarily finds that he is qualified to testify as to the interstate

nexus of the firearm at issue in this case.  The Court agrees with plaintiff that there is nothing

particularly novel about the proposed expert testimony, and finds that a pretrial <u>Daubert</u> hearing is

unnecessary.  Weeden's motion to "preventively" exclude expert testimony as to the interstate nexus

of the firearm and motion for hearing (Dkt. ## 50, 52) are denied.

## **Motions in Limine/Discovery Issues (Dkt. ## 31, 48, 54)**

Weeden requests that the Court prevent plaintiff from using any evidence at trial that has not

been disclosed to defense counsel in pretrial discovery, and he asks the Court to dismiss the charges

against him due to plaintiff's failure to timely produce discovery materials.  Dkt. ## 31, 48, 54.

Weeden also asks the Court to exclude evidence of his alleged gang affiliation, and he argues that

evidence of his prior juvenile and felony convictions is inadmissible if he agrees to stipulate that he

was prohibited from possessing a firearm.  Dkt. # 31.  Plaintiff responds that it does not intend to

introduce evidence of defendant's gang affiliation, but Weeden's proposed stipulation that he is a

"prohibited person" is not sufficient under <u>Old Chief v. United States</u>, 519 U.S. 172 (1997).  Plaintiff

also states that it has made three separate productions of discovery materials to defense counsel, and

further supplementation of the discovery materials has been delayed due to a ransomware attack that

has prevented production of additional materials in the possession of TPD.  Dkt. # 66.

The Court will initially consider Weeden's argument that he may stipulate that he is a

"prohibited person" in order to prevent the introduction of the fact that he has previously been

convicted of a felony.  The use of a "prohibited person" stipulation, instead of a stipulation to the

---

[7]      <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 507 U.S. 904 (1993).

fact of a prior felony conviction, has expressly been considered by the Tenth Circuit.  In United States v. Silva, 889 F.3d 704 (10th Cir. 2018), the district court rejected a stipulation offered by the defendant that he was a "prohibited person" under 18 U.S.C. § 922(g), and the district court instructed the jury using a stipulation in which the defendant admitted that he had previously been convicted of a felony.  Id. at 708.  On appeal, the defendant argued that the district court should have accepted his proposed stipulation that he was a "prohibited person," and he argued that he was unfairly prejudiced by having to admit to the fact of a prior conviction.  The Tenth Circuit performed an analysis under Fed. R. Evid. 403 and determined that the use of a standard Old Chief stipulation is not unfairly prejudicial to a defendant.  Id. at 714-16.  The use of the term "prohibited person" was potentially confusing for the jury, and a stipulation to the fact of a felony conviction, without reference to the nature of the conviction, did not create a substantial risk of unfair prejudice.  Id.  The Court will follow Silva, and Weeden may stipulate to the fact of a prior conviction pursuant to Old Chief, but the Court will not instruct the jury using a stipulation that Weeden is a "prohibited person."  Plaintiff states that it may seek to use defendant's prior felony conviction to impeach Weeden if he should testify at trial, but it agrees that evidence as to the nature of any prior convictions will not be admitted as part of plaintiff's case-in-chief if Weeden signs an Old Chief stipulation.

Weeden claims that plaintiff has failed to timely produce discovery materials, and he asks the Court to compel additional discovery or dismiss the charges against him.  Weeden also argues that plaintiff should not be permitted to use evidence that has not been disclosed in pretrial discovery, and he claims that plaintiff should not be permitted to supplement its discovery

disclosures.[8] Dkt. # 48, at 7.  Defense counsel provides a list of evidence that he claims has not been produced to him, although it is not clear that all of the types of evidence actually exist in this case. Id. at 5-7.  Plaintiff responds that its ability to obtain discovery materials has been affected due to a ransomware attack on TPD, but TPD has been able to recover some of the data and TPD has begun to assist plaintiff with the production of discovery materials.  Dkt. # 66, at 2.  Plaintiff states that it has already produced most of the discovery materials to defense counsel, and it will continue to comply with its discovery obligations under Brady[9] and Giglio.[10]  The case is currently set for trial on November 15, 2021, and the parties should continue to confer in an effort to expedite the exchange of any outstanding discovery materials.  The Court will not at this time exclude evidence that has not yet been disclosed to defense counsel, nor will the Court dismiss the charges against Weeden.  Weeden's motions to exclude undisclosed evidence (Dkt. ## 31, 48) and his motion to dismiss the indictment (Dkt. # 54) are denied.  The parties are also reminded of their obligation to confer in good faith to resolve any discovery disputes, and the Court is not required to consider motions concerning discovery disputes unless the moving party certifies in writing that this requirement has been satisfied.  LCrR 16.1.

---

[8]      Weeden's arguments concerning the untimely production of discovery materials are based on the notion that he will be unfairly prejudiced, because the trial was set for August 9, 2021 and defense counsel would not have time to review the discovery materials before trial.  Dkt. # 48, at 1-2.  However, the trial is currently set for November 15, 2021, and defense counsel will have likely have sufficient to review any newly produced discovery materials.

[9]      Brady v. Maryland, 373 U.S. 83 (1963).

[10]     Giglio v. United States, 405 U.S. 150 (1972).

**Disclosure of Confidential Informant (Dkt. # 51)**

Weeden requests that the Court compel plaintiff to identify the RCI referenced in Cawiezell's affidavit in support of the search warrant, because Cawiezell's affidavit fails to specify the RCI's criminal history and the amount paid to the RCI for the information. Plaintiff responds that the RCI merely provided a tip and did not take part in the alleged offense, and disclosure of the RCI's identity will not be relevant or helpful to defendant. Dkt. # 63.

In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court considered the circumstances under which the government had the "right to withhold the identity of an informer who helped to set up the commission of the crime and who was present at its occurrence." Id. at 61. The Supreme Court declined to create a "fixed" rule for this issue and, instead, directed lower courts to consider "the circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. The Tenth Circuit has explained that "[t]he government enjoys a privilege to withhold disclosure of a confidential source's identity due to a strong public interest in furthering effective law enforcement," and disclosure is not appropriate "when the identity is not relevant, helpful, or serves merely a cumulative purpose . . . ." United States v. Robinson, 993 F.3d 839, 848 (10th Cir. 2021). Disclosure of the RCI's identity is required "in limited circumstances where the defendant's need for information to prepare his defense outweighs the government's need to protect its sources." United States v. Long, 774 F.3d 653, 663 (10th Cir. 2014). Defendant bears the burden of demonstrating the need for disclosure of the RCI's identity. Unites States v. Vincent, 611 F.3d 1246, 1251 (10th Cir. 2010).

18

Weeden has not met his burden for disclosure of the RCI's identity.  This is not a case in which the RCI allegedly set up or participated in the charged offenses, and information about the RCI will not be substantially probative to Weeden's defense against the charges in this case.  The RCI provided information that a person identified as "Valentino Weeden" was in possession of a firearm, but the RCI's credibility will not be an issue at trial.  The RCI merely provided the impetus for Cawiezell to initiate an investigation into "Valentino Weeden," and information about the RCI's criminal history or possible payments to the RCI will have no bearing on the issue of whether plaintiff can prove that Weeden was in possession of a firearm on the date alleged in the indictment. Defense counsel has made allegations of police misconduct, but these allegations are speculative and are not specific to this case.  Weeden has not shown that the information he seeks about the RCI will be even minimally relevant in this case, and his motion to disclose identity (Dkt. # 51) is denied.

**Motion to Dismiss Count One as Duplicitous (Dkt. # 53)**

Weeden argues that the charge alleged in count one of the indictment is duplicitous, because he is charged with being a felon in possession of a firearm and ammunition.  Dkt. # 53.  Plaintiff responds that it properly charged Weeden using the statutory language of § 922(g), and the indictment charges only a single crime against Weeden.  Dkt. # 64.

A charge is duplicitous if it joins two or more offenses in the same count.  United States v. Trammell, 133 F.3d 1343, 1354 (10th Cir. 1998).  There are three dangers that could result from a duplicitous indictment: "(1) a jury may convict a defendant without unanimously agreeing on the same offense; (2) a defendant may be prejudiced in a subsequent double jeopardy defense; and (3) a court may have difficulty determining the admissibility of evidence."  Id. (quoting United States v. Wiles, 102 F.3d 1043, 1061 (10th Cir. 1996)).  Duplicity may be cured by a pretrial motion asking

the government to elect which crime it intends to prove at trial or with jury instructions requiring

unanimous findings on the underlying factual allegations.  United States v. Gann, 159 Fed. Appx.

57 (10th Cir. Jan. 9, 2006).[11]

The Court finds that indictment properly relied on the statutory language, and Weeden has

not shown that multiple crimes are alleged in count one of the indictment.  "It is well settled 'that

an indictment may charge . . . commission of any one offense in several ways,' and 'each offense

whose elements are fully set out in an indictment can independently sustain a conviction.'"  United

States v. Davis, 995 F.3d 1161, 1167 (10th Cir. 2021).  The Tenth Circuit has specifically found that

it is appropriate for the government to conjunctively charge a defendant with possessing a firearm

and ammunition in a single count, and plaintiff is not required to elect in the indictment if it is

seeking to ultimately prove a § 922(g) conviction by proving possession of a firearm, ammunition,

or both.  Silva, 889 F.3d at 717.  In fact, § 922(g) and an indictment charging both the possession

of a firearm and ammunition "provide an apt example of how the conjunctive charging rule works

in practice when a crime is (1) stated in the statute in the disjunctive, (2) charged in the indictment

in the conjunctive, and (3) proved at trial in the disjunctive."  Id.  In this case, count one of the

indictment charges that defendant knowingly possessed in and affecting interstate commerce a

firearm and ammunition, and a conviction may be obtained by plaintiff with evidence showing

beyond a reasonable doubt that defendant knowingly possessed either a firearm or ammunition.  The

law is clear that this constitutes a single criminal charge and defendant's motion (Dkt. # 53) to

dismiss count of the indictment as duplicitous is denied.

---

[11]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See
        Fed. R. App. 32.1: 10th Cir. R. 32.1.

**IT IS THEREFORE ORDERED** that Defendant's Motion in Limine (Dkt. # 31), Defendant's Motion to Suppress Evidence from the Unlawful Search of Vehicle (Silver Dodge Charger) (Dkt. # 47), Defendant's Second Motion in Limine to Prohibit Government Use of Untimely Undisclosed Evidence (Dkt. # 48), Defendant's Preventive Motion to Strike Anticipated Government Expert Testimony and/or In the Alternative a Request for *Daubert* Hearing (Dkt. ## 50, 52), Defendant's Motion to Disclose Confidential Informant and Memorandum in Support Thereof (Dkt. # 51), Motion and Memorandum in Support to Dismiss Count One of the Indictment for Duplicity, or in the Alternative to Require Government to Elect  Between Multiple Charges Contained in the Same Charge (Dkt. # 53), Motion to Dismiss Indictment, or in the Alternative Compel Discovery Subject to Defendant's Pending Motion in Limine (Dkt. # 54), and Defendant's Motion to Suppress Evidence and *Franks* Hearing (Dkt. # 56) are **denied**.

**IT IS FURTHER ORDERED** that Weeden's sealed motion (Dkt. # 60) is **moot**.

**DATED** this 25th day of August, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

21