## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-0297-CVE |
| | ) | |
| CHRISTOPHER VALENTINO WEEDEN, | ) | |
| previously named as Christopher Weeden, | ) | |
| VALENA ROSE HUNT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Defendants Weeden and Hunt's Joint Motion to Dismiss for Grand Jury Misconduct (Dkt. # 89), Defendants Weeden and Hunt's Joint Motion to Suppress Statements and for *Jackson v. Denno* Hearing (Dkt. # 90), and Weeden's Motion to Dismiss for Speedy Trial (Dkt. # 91). Defendant Christopher Valentino Weeden asks the Court to suppress statement he made to law enforcement officials following his arrest in November 2020. Dkt. # 90. He also asks the Court to dismiss the case for alleged misconduct of a witness during grand jury proceedings and for violation of his right to a speedy trial. Dkt. ## 89, 91.

### I.

On November 17, 2020, a magistrate judge signed a complaint (Dkt. # 1) charging Weeden with being a felon in possession of a firearm, possession of marijuana with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and maintaining a drug involved premises. On November 18, 2020, a grand jury returned an indictment charging Weeden with being a felon in possession of a firearm and ammunition, and Valena Rose Hunt is charged with aiding and

abetting Weeden in the commission of this offense (count one).  Dkt. # 4, at 1-2.  Hunt is charged

with knowingly disposing of a firearm and ammunition to a convicted felon (count two).  Id. at 3.

Weeden and Hunt are also charged with possession of marijuana with intent to distribute (count

three), possession of a firearm in furtherance of a drug trafficking crime (count four), and

maintaining a drug involved premises (count five).  Id. at 4-6. Weeden was arrested and made his

initial appearance on November 25, 2020, and the Court appointed Stephen Layman to represent

defendant.  Judge John E. Dowdell entered a scheduling order setting the case for jury trial on

January 19, 2021.  Dkt. # 17.

Layman filed a motion to continue the jury trial to March 2021 to allow him sufficient time

to prepare for trial, and Judge Dowdell granted the motion for a continuance.  Dkt. ## 23, 25.

Layman requested another continuance seeking additional time to review the discovery and possibly

file pretrial motions, and Judge Dowdell continued the jury trial to April 2021.  Dkt. ## 27, 30.

Weeden attempted to file a pro se motion (Dkt. # 28) to suppress evidence, and Layman filed a

motion in limine (Dkt. # 31) seeking to exclude evidence of defendant's gang affiliation and prior

convictions.  The trial was continued to July 2021 pursuant to general orders entered by Court

continuing criminal jury trials due to COVID-19.  Dkt. ## 36, 37.  Layman requested leave to

withdraw from his representation of defendant due to a breakdown of the attorney/client relationship.

Judge Dowdell granted Layman's motion to withdraw and appointed Robert Gifford, II as substitute

counsel.  Dkt. # 39.  The case was randomly reassigned to the undersigned after Judge Dowdell took

senior status.  Dkt. # 41.  The Court continued the case to the October 2021 jury trial docket pursuant

to general orders continuing cases due to the limited availability of jury trials due to COVID-19.

Dkt. ## 43, 57.

Weeden filed numerous pretrial motions and a notice (Dkt. # 55), in which he demanded a speedy trial.  Weeden sought to suppress evidence seized from a residence located at 11708 East 7th Street in Tulsa, Oklahoma, and he asked the Court to suppress evidence seized from a vehicle found in the driveway when the residence was searched.  On November 12, 2020, police officers executed a search warrant at this address and Weeden and Hunt were found inside the residence when the search warrant was executed.  Dkt. # 87, at 3.  Police recovered marijuana, a firearm and ammunition, and evidence of a marijuana grow operation inside the residence, and they found two notebooks containing drug notations inside a vehicle parked in the driveway.  The Court found that search warrant was supported by probable cause and rejected Weeden's arguments concerning the unreliability of the informant referenced in the affidavit for search warrant.  Dkt. # 87, at 5-11.  The search of the vehicle found in the driveway was expressly authorized by the search warrant, and the Court also rejected Weeden's argument for suppression of evidence found in the vehicle.  Id. at 12-14.  The Court also denied Weeden's motions to dismiss charges, exclude expert testimony, and for disclosure of the identity of reliable confidential informant utilized by police officers to obtain the search warrant.  Id. at 15-20.

Hunt was not arrested until August 13, 2021, and Patrick Quillian has been appointed to represent Hunt.  Dkt. # 73.  Due to the appearance of Weeden's co-defendant, the Court continued the jury trial to November 15, 2021. Dkt. # 86.  Weeden's counsel asked the Court to continue the jury trial to December 2021 due to a scheduling conflict, even though Weeden refused to waive his right to a speedy trial for the requested continuance.  Dkt. # 109.  The Court continued the trial to December 20, 2021, based on a general order continuing most criminal cases due to the limited availability of criminal jury trials, and defense counsel's motion to continue the jury trial became

moot.  Dkt. # 111.  The trial is currently set for January 18, 2022 pursuant to another general order continuing most criminal trials.  Dkt. # 114.

## II.

Weeden argues that the indictment should be dismissed for violation of his right to a speedy trial and alleged grand jury misconduct.  He also requests a pretrial hearing to determine the admissibility of statements he made to the police following the execution of a search warrant on November 12, 2020.  Two of defendant's motions (Dkt. ## 89, 90) are styled as joint motions on behalf of Weeden and Hunt, but Hunt's attorney has not signed the motions or filed a request for joinder in the motions.  Gifford is advised that he does not represent Hunt and he may not file motions on her behalf, and the pending motions will be considered only as they relate to Weeden.

**Grand Jury Misconduct (Dkt. # 89)**

Weeden argues that the indictment should be dismissed, because a key witness before the grand jury, Special Agent Brett Williams of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, intentionally or recklessly gave false or misleading testimony concerning Weeden's potential criminal liability.  Dkt. # 89.  Plaintiff responds that Weeden has not shown that the indictment was invalid for lack of probable cause or that any prosecutorial misconduct occurred, and there was no false or perjured testimony presented to the grand jury when it made its decision to issue the indictment in this case.  Dkt. # 100.

The Supreme Court has explained that grand juries function independently from the federal courts, and the federal district court that constitutes a grand jury for its district has limited authority to supervise or control grand jury procedure.  United States v. Williams, 504 U.S. 36, 49 (1992). Federal district courts may not dismiss an indictment for alleged misconduct unless the defendant

can show that he was prejudiced.  Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988).

An indictment may be dismissed for prosecutorial misconduct "which is flagrant to the point that

there is some significant infringement on the grand jury's ability to exercise independent judgment."

United States v. Kilpatrick, 821 F.2d 1456 (10th Cir. 1987).   Improper or inaccurate comments by

a prosecutor or witness during grand jury proceedings do not require dismissal of an indictment

unless the comments "have biased the grand jury and impaired its ability to review the case against

the accused impartially and independently."  United States v. Hillman, 642 F.3d 929, 934 (10th Cir.

2011).

Weeden claims that Williams falsely told the grand jury that a convicted felon cannot be

present in a home with a gun stored in a safe unless he had no knowledge of the combination to the

safe and could not access the gun.  Dkt. # 89, at 3.  This was merely an example provided by

Williams when asked to describe the concept of constructive possession to the grand jury, and this

example was preceded by more general testimony that a convicted felon may not have access to a

firearm.  Dkt. # 89-1, at 15.  Even if Williams' testimony very broadly describes the applicable law,

there is no reasonable way to view his testimony as intentionally false or misleading, and he was

attempting to generally explain the law to lay persons who were responsible for determining if there

was probable cause to issue an indictment.  The Court finds no possibility that Williams' description

of the law of constructive possession impaired the ability of the grand jury to consider the evidence

in a fair and impartial manner.

Weeden argues that Williams falsely represented to the grand jury that "all bills" for the

relevant address were in Weeden's name and that Weeden was a "renter" of the home.  Dkt. # 89,

at 4-5.  Weeden also claims that Williams falsely testified that a white substance found at the

residence was methamphetamine and that Williams lacked sufficient expertise to testify about marijuana grow operations.  Id. at 6-7.  The Court initially notes that Weeden has not offered any evidence establishing that these are actually false statements or misrepresentations, and he merely argues that his counsel believes Williams' statements are false based on counsel's review of the discovery materials.  Weeden has failed to provide a sufficient record for the Court to even consider his challenges to certain aspects of Williams' grand jury testimony, and defense counsel's belief that Williams made false or misleading statements to the grand jury is not a sufficient basis to dismiss the indictment.  Even if the Court assumed Williams made factually inaccurate statements to the jury, none of the matters raised by Weeden is material and Weeden would not be able to show that the fundamental fairness of the grand jury proceedings was impaired by Williams' testimony. Weeden's arguments are more appropriately characterized as issues that should be raised when his attorney cross-examines Williams at trial, and the alleged misstatements by Williams have no tendency to show that the grand jury made its decision to indict defendant due to flagrant prosecutorial misconduct or improper bias.  Weeden's motion to dismiss the indictment due to alleged misconduct in the grand jury proceedings (Dkt. # 89) is denied.

**Admissibility of Post-Arrest Statements (Dkt. # 90)**

Weeden asks the Court to suppress any statements he made to police after the execution of the search warrant, and he requests an evidentiary hearing before the Court rules on his motion.  Dkt. # 90.  Plaintiff responds that Weeden received a Miranda[1] warning and his statements to police officers were voluntary, and plaintiff has provided body camera footage of the Weeden's interview

---

[1]     Miranda v. Arizona, 384 U.S. 436 (1966).

6

with police.  Dkt. # 102.  The Court has reviewed the video footage and finds that it can rule on Weeden's motion without an evidentiary hearing.

On November 12, 2020, TPD officers executed a search warrant at 11708 East 7th Street in Tulsa, and Weeden and Hunt were both in the residence when the search warrant was executed. Weeden and Hunt were placed in handcuffs and moved to the living room with two other persons who where found in the house.  TPD Officers Donald Cox and Brad Blackwell took Weeden to a bedroom, and Cox read Weeden his <u>Miranda</u> rights from a card.  Weeden stated that he understood his rights and wished to speak to the police.  Weeden stated that he was served with the search warrant when police officers arrived at the residence, and Cox advised Weeden that police found a firearm in a bedroom during the search.  Weeden claimed that the firearm was "legally registered" to his wife and the firearm was ordinarily kept in a safe.  He stated that his wife removed the firearm from the safe when the police arrived at the residence, because they did not know who had come to the house.  Weeden's son told him that police officers were at the house, and Weeden's wife may have placed the firearm on the bed before going to meet the police officers.  Cox advised Weeden that he would be charged with a federal crime for being a convicted felon in possession of a firearm or for being a drug user in possession of a firearm.  Cox noticed that Weeden's tattoos signified gang affiliation or membership, and Weeden claimed that he was not currently a gang member.  Cox and Blackwell told Weeden that they had seen him fleeing from the police in a vehicle the day before the search warrant was executed, and Weeden denied that had attempted to flee from the police. Weeden stated that he had an outstanding warrant in Pawnee County, Oklahoma for a speeding offense.  The encounter with Weeden became argumentative and he claimed he had no reason to avoid contact with police officers.  Weeden denied that he owned, carried, or possessed a firearm

since he had been released from prison, and Cox explained that Weeden could be charged with constructive possession of a firearm.  Weeden stated that if he did carry a firearm it would be a larger caliber firearm with a bigger clip for ammunition, and he claimed that his wife purchased her firearm before she met Weeden.  After additional conversation with Weeden, Cox asked where Weeden kept his cellular phone and Cox terminated the interview with Weeden.

In <u>Miranda</u>, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Miranda</u>, 384 U.S. at 444.  Under this rule, a court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect.  <u>United States v. Patane</u>, 542 U.S. 630 (2004); <u>United States v. McCurdy</u>, 40 F.3d 1111, 1117 (10th Cir. 1994).  Once a <u>Miranda</u> warning has been given, police must refrain from interrogating a suspect if he unambiguously invokes his right to silence.  <u>Michigan v. Mosley</u>, 423 U.S. 96, 101 (1975).  However, a suspect impliedly waives his right to remain silent if he receives a <u>Miranda</u> warning, understands the <u>Miranda</u> warning, and makes an uncoerced statement to police. <u>Berghuis v. Thomkins</u>, 560 U.S. 370, 384-85 (2010).  The fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a <u>Miranda</u> warning.  <u>United States v. Pettigrew</u>, 468 F.3d 626, 636 (10th Cir. 2006).  The <u>Miranda</u> exclusionary rule requires only that the court exclude any "unwarned statement" itself.  <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985).  Even if police obtain a statement from a suspect in violation of <u>Miranda</u>, this does not taint a subsequent warned confession or statement if the statement was voluntarily made.  <u>Elstad</u>, 470 U.S. at 309; <u>Pettigrew</u>, 468 F.3d at 635.

The government bears the burden to prove by a preponderance of the evidence that a confession or statement was voluntary. Pettigrew, 468 F.3d at 633. The Court must consider the totality of the circumstances to determine whether defendant's Miranda waiver was voluntary. United States v. Jones, 701 F.3d 1300, 1318 (10th Cir. 2012). The Tenth Circuit has identified five factors that should be considered to determine whether a Miranda waiver was voluntary:

> (1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment.

United States v. Carrizales-Toledo, 454 F.3d 1142, 1153 (10th Cir. 2006) (quoting United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997)). These factors are not exclusive and a court should consider any other evidence showing that "the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." Id. (quoting United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999)).

Weeden argues that plaintiff has the burden to establish that he knowingly and voluntarily agreed to speak to police officers, but he does not raise any specific argument in support of his request to exclude statements made during his custodial interrogation. Dkt. # 90, at 4. The body camera footage establishes that Weeden received a Miranda warning and he expressly waived his right to remain silent. The Court will consider the totality of the circumstances to determine whether Weeden knowingly and voluntarily waived his right to silence, but the evidence establishes that there is no Miranda violation due to the lack of a Miranda warning. Weeden is an adult male who was 31 years old when the interview took place. Dkt. # 3, at 1. The interview lasted approximately ten minutes and Weeden did not request to terminate the interview at any point. Weeden was

9

handcuffed during the interview, but he was not subjected to any physical or verbal abuse.  The interview did become heated and argumentative at times, but this was often due to Weeden's vigorous denial that he had engaged in illegal activity.  The Court also notes that Weeden denied ownership or possession of the firearm throughout the interview, and he was not coerced into making any directly incriminating statements  The Court finds that Weeden knowingly and voluntarily waived his <u>Miranda</u> rights and participated in the interview understanding the consequences of his decision, and Weeden's motion to suppress evidence of his statements during a custodial interrogation (Dkt. # 90) is denied.

**Speedy Trial (Dkt. # 91)**

Weeden argues that his rights under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq.</u>, have been violated by repeated continuances of the jury trial, and he has asks the Court to dismiss the charges against him.[2]  Plaintiff responds that Weeden's jury trial has been continued at his request and pursuant to general orders of the Court related to the COVID-19 pandemic, and Weeden cannot show that plaintiff was responsible for any delay or that Weeden was prejudiced by the delay of his trial.

"In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, a court must balance four factors: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant." <u>United States v. Toombs</u>, 574 F.3d 1262, 1274 (10th Cir. 2009) (citing <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972)); <u>see also</u>

---

[2]     Weeden cites the Speedy Trial Act and generally argues that ends of justice continuances were not appropriate, but he has not challenged any specific continuance or undertaken a speedy trial calculation. Dkt. # 91, at 6-7.  Weeden's counsel must do more than make a vague assertion that the Speedy Trial Act has been violated, and the Court declines to consider this issue due to the vague and conclusory nature of Weeden's argument.

United States v. Seltzer, 595 F.3d 1170, 1176 (10th Cir. 2010).  "No one of the factors is necessary or sufficient to conclude a violation has occurred."  Toombs, 574 F.3d at 1274 (citing Barker, 407 U.S. at 530).  "Instead, the factors are related and must be considered together along with other relevant circumstances."  Id. (citing United States v. Gomez, 67 F.3d 1515, 1521 (10th Cir. 1995)).  "'The first factor, length of delay, functions as a triggering mechanism' and 'the remaining factors are examined only if the delay is long enough to be presumptively prejudicial.'"  Id. (quoting United States v. Yehling, 456 F.3d 1236, 1243 (10th Cir. 2006)).

The first factor is the "length of the delay in pursuing the case against the defendant."  Id. The Tenth Circuit has stated that this factor requires a "double inquiry."  Id.  First, the "accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial delay.'"  Id. (quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992).  "Second, '[i]f the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'"  Id. (quoting Doggett, 505 U.S. at 652).  The Tenth Circuit noted that, where a delay was "more than a year," it was "presumptively prejudicial."  Id. Generally, "'the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first.'"  Id. (quoting Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004)).  However, the fact that the delay was lengthy, standing alone, does not make the delay unreasonable.  Id.  A district court should look to "other factors," including "the nature of the charges."  Id. (citing Barker, 407 U.S. at 531).  In this case, the grand jury returned an indictment against Weeden on November 18, 2020, and the case has been pending for a year.  Plaintiff does not dispute that the delay is sufficient to create a presumption

of prejudice, but plaintiff argues that any delay was not caused by plaintiff and Weeden has not timely asserted his right to a speedy trial.

The second factor for the Court to consider is the cause of the delay. Weeden argues that plaintiff has failed to provide an explanation for promptly prosecuting the charges against him, but he makes no specific arguments in support of this assertion. Dkt. # 91, at 9. The record shows that the delay in this case attributable to motions filed by defendant to continue the jury trial and general orders entered by the Court continuing all pending cases awaiting jury trial due to the COVID-19 pandemic. None of these delays is attributable to plaintiff. The Court also notes that any delay caused by Weeden's filing of pretrial motions is not counted against plaintiff. United States v. Black, 830 F.3d 1099, 1114 (10th Cir. 2016). Weeden's vague claim that plaintiff should be deemed responsible for any delay in bringing this case to trial is not supported by any evidence. In fact, Weeden's requests for continuances and the numerous pretrial motions he has filed have much more to do with the delay, and this factor weighs strongly against a finding that Weeden's right to a speedy trial has been violated.

The third factor is Weeden's assertion of his right to a speedy trial, and this factor also does not weigh in favor of a finding that a speedy trial violation has occurred. Weeden's demand for a speedy trial (Dkt. # 55) was filed on July 23, 2021, nearly eight months after the indictment was returned, and this does not constitute a timely assertion of defendant's right to a speedy trial. Weeden filed two motions for a continuance of the jury trial (Dkt. ## 23, 27), and this is inconsistent with a demand for a speedy trial. Weeden also filed numerous pretrial motions, including a motion to dismiss the indictment (Dkt. # 54), and these motions would have to be ruled on before the jury trial could take place. After the Court denied seven pretrial motions, Weeden filed three more

12

pretrial motions and his own attorney could not appear for jury trial in November 2021 due to a scheduling conflict.  Dkt. # 109.  Weeden's assertion of his right to a speedy trial is not of such a clear and compelling nature that it weighs in favor of a finding that a speedy trial violation has occurred.

The final factor is whether defendant has been prejudiced by any delay of the jury trial.  The defendant bears the burden to establish prejudice unless the delay is extreme, and the "benchmark for extreme delay is ordinarily six years."  United States v. Nixon, 919 F.3d 1265, 1273 (10th Cir. 2019).  When there is no presumption of prejudice, the district court should consider three potential interests underlying the right to a speedy trial of preventing oppressive incarceration, minimizing the anxiety and concern of the defendant, and limiting the possibility that the defense will be impaired. Id. at 1274.  Defendant claims that he has been held in "oppressive detention, unable to work, [and] unable to obtain documents to assist counsel in his defense . . . ."  Dkt. # 91.  This is not a particularized showing of prejudice as required by Tenth Circuit precedent, and Weeden has not met his burden to show that he has been prejudiced by any delay in proceeding to trial.

Considering all of the factors, the Court finds that Weeden has not shown that his constitutional right to a speedy trial has been violated. It has been over a year from the time that Weeden was charged to the present date, but Weeden has not shown that plaintiff bears any responsibility for the delay in bringing him to trial or that he has suffered any prejudice from the delay.  The evidence concerning Weeden's assertion of his right to a speedy trial also shows that his demand for a speedy trial is somewhat equivocal in nature.  The delay in bringing Weeden to trial is reasonable under the circumstances and Weeden will be able to receive a fair trial, and his motion (Dkt. # 91) to dismiss the indictment for violation of his right to a speedy trial is denied.

13

**IT IS THEREFORE ORDERED** that Defendants Weeden and Hunt's Joint Motion to Dismiss for Grand Jury Misconduct (Dkt. # 89), Defendants Weeden and Hunt's Joint Motion to Suppress Statements and for *Jackson v. Denno* Hearing (Dkt. # 90), and Weeden's Motion to Dismiss for Speedy Trial (Dkt. # 91) are **denied**.

**DATED** this 9th day of December, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

14